UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENDALL HALL,

      Plaintiff,

v.

                                          Case No. 3:25-cv-1035-JEP-LLL

MOLLY C. MERRY, et al.,

      Defendants.

_____

## ORDER

Plaintiff Wendall Hall, a civil detainee at the Florida Civil Commitment Center ("**FCCC**"), is proceeding on a pro se Complaint for Violation of Civil Rights ("**Complaint**," Doc. 1) and various motions (Docs. 2, 7, 8, 10, 11, 13).[1] Plaintiff names the following individuals as Defendants in their individual and official capacities: (1) Molly C. Merry ("**Merry**"), Director of Division of Risk Management; (2) Stephen Hall ("**Hall**"), Program Administrator, Division of Risk Management; (3) Erik Kverne ("**Kverne**"), Assistant Attorney General; (4) Cynthia Noblett ("**Noblett**"), Business Office Manager at FCCC; and (5) Jon Carner ("**Carner**"), Security Director Supervisor at FCCC. (Doc. 1 at 1–3).

---

[1] This action was originally filed in the Northern District of Florida, but was transferred to this Court on September 4, 2025. (*See* Doc. 4).

The present action seems to arise from a private settlement Plaintiff reached with Sergeant Charles Watson and Officer Wright in Plaintiff's prior lawsuit filed in this Court, No. 3:15-cv-1054-BJD-PDB.[2] In that lawsuit, the District Court denied Plaintiff's requests to withdraw from the settlement agreement, which the Eleventh Circuit affirmed, explaining in relevant part as follows:

> Initially, [Plaintiff[3]] tried to undo the settlement agreement in a series of filings, citing the "heavy influence of his psychiatric medications" when he signed the agreement. He also accused the defendants of "collusion, fraud[,] or bad faith," asserting that the defendants knew the settlement proceeds would be forfeited or seized to satisfy a civil-restitution lien,[4] of which he claimed to lack prior knowledge. Just a few days later, though, [Plaintiff] reversed himself and asked to withdraw these filings. He declared under penalty of perjury that he "now accepts the settlement agreement as written, stipulated and agreed to and signed by Plaintiff."
>
> The district court granted [Plaintiff's] motion to withdraw his filings on October 24, 2023. Then, on November 19, 2023, the defendants submitted a joint stipulation of voluntary dismissal,

---

[2] The Court may take judicial notice of its own records. *See Colburn v. Odom*, 911 F.3d 1110, 1112 n.6 (11th Cir. 2018); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

[3] The Eleventh Circuit referred to Plaintiff as "Hall," but to avoid confusion with one of the named Defendants in this action (Stephen Hall), this Court does not refer to Plaintiff by his last name.

[4] A civil restitution lien for the cost of Plaintiff's incarceration in the amount of $250,000, plus interest, was entered in favor of the State in Plaintiff's underlying criminal case, No.1994-CF-3077, in Escambia County Circuit Court on June 12, 2023. (*See* Doc. 13-1 at 4).

with prejudice, under Federal Rule of Civil Procedure 41(a)(1)(A), which [Plaintiff] had signed on September 27, 2023.

A few days before the stipulation was filed, [Plaintiff] again sought to withdraw from the settlement agreement and to reopen the case. This time, [Plaintiff] accused the defendants of violating the agreement by stopping payment on the settlement check after 30 days, despite banking instructions that provided him 90 days to cash the check, and by stating that the check would be reissued to FCCC officials, not to [Plaintiff] personally.

. . . . The defendants replied, providing evidence that a $20,000 check for [Plaintiff] was placed in his account on November 28, 2023, and cleared on December 8, 2023. It appears the funds were then withdrawn to satisfy the lien.

The district court denied [Plaintiff's] various requests for relief in an order entered on May 20, 2024. . . . [T]he court found that the motion was without merit because [Plaintiff] had agreed to the terms of the settlement, with which the defendants complied by placing the money in [Plaintiff's] FCCC inmate account. To the extent [Plaintiff] believed the defendants breached the agreement, the court continued, the agreement itself required him to proceed through "an action for breach of contract" in state court. And, finally, the court concluded that [Plaintiff] could not obtain broader relief against the FCCC or from the civil-restitution lien in this action. The court denied [Plaintiff's] motions and dismissed the claims against Watson and Wright with prejudice, pursuant to the parties' joint stipulation of voluntary dismissal, with each party to bear their own costs and fees. . . .

Here, the district court did not abuse its broad discretion. As the court noted, [Plaintiff] expressly "accept[ed] the settlement agreement as written, stipulated and agreed to and signed by Plaintiff." . . . . Accordingly, under both the parties' contract and binding precedent, "enforcement of the settlement agreement is for state court."

For these reasons, the district court properly declined to resolve [Plaintiff's] allegations that the defendants breached the terms of

the settlement agreement, that the civil-restitution lien was invalid, or that other non-parties assisted in the breach or committed other misconduct. These matters are beyond the scope of the court's jurisdiction to resolve the underlying § 1983 case. *We note, however, that nothing we say here prevents [Plaintiff] from seeking relief on these allegations in state court, or from bringing a separate federal lawsuit arising from these allegations based on a violation of a federal right.*

(Doc. 314 at 3–5, 8–9 in No. 3:15-cv-1054-BJD-PDB (citations omitted; emphasis added)).

Apparently motivated by the Eleventh Circuit's final comment that Plaintiff was not prevented "from bringing a separate federal lawsuit arising from these allegations based on a violation of a federal right," (*id.* at 9), Plaintiff filed the present action seemingly raising a due process claim under the Fourteenth Amendment and a retaliation claim under the First Amendment.[5] (*See generally* Doc. 1). Plaintiff essentially alleges that Merry, Hall, Kverne, Noblett, and Carner colluded to unlawfully seize Plaintiff's settlement proceeds to satisfy his civil restitution lien without due process of law and in retaliation for filing lawsuits. (*Id.* at 7–16). As relief, Plaintiff requests $5 million in "monetary, compensatory[,] and punitive damages," and

---

[5] Although Plaintiff references both the Fifth and the Fourteenth Amendments, the Fifth Amendment is inapplicable because Plaintiff sues only state officials. *See Buxton v. Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.").

an injunction requiring Defendants to reimburse Plaintiff for the unlawfully seized settlement proceeds and barring Defendants from taking money deposited into Plaintiff's FCCC account without statutory authority. (*Id.* at 5, 16).

The Prison Litigation Reform Act ("**PLRA**") requires the Court to dismiss an action at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), and, therefore, courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to

"naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). The factual allegations in a complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). All reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). While "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). Further, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." *Rehberger v. Henry Cnty., Ga.*, 577 F. App'x 937, 938 (11th Cir. 2014)[6] (quotations and

---

[6] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

citation omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

In assessing a pro se party's pleadings, the court must read the allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). However, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corrs.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *See Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015); *Bingham*, 654 F.3d at 1175 (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citations omitted). Moreover, under Eleventh Circuit precedent, to prevail in a section 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401

(11th Cir. 1986) (citation omitted); *Porter v. White*, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Construed liberally, Plaintiff's Complaint must be dismissed without prejudice for failure to state a claim for relief under the PLRA. As an initial matter, Plaintiff's claims in this action are premised on factual assertions that were rejected by both the District Court and the Eleventh Circuit in his prior lawsuit. (*See* Docs. 307, 314 in No. 3:15-cv-1054-BJD-PDB). For example, as explained in the District Court's order denying Plaintiff's request to withdraw from the settlement agreement:

> Plaintiff claims to have had no knowledge of the Escambia County lien when he entered into the settlement agreement and, had he known of it, he would not have signed the settlement agreement.[3] He contends Defendants' conduct—stopping payment on the first check and hand-delivering the second check to an FCCC official for direct deposit into his FCCC account—amounts to a breach of contract, thereby permitting him to repudiate the agreement.
>
> > FN3: In light of the state court docket, which shows Plaintiff responded to the [FDOC's] motion for imposition of a civil restitution lien, the lien order, which shows a copy was mailed to Plaintiff at FCCC, and Plaintiff's blatant attempt to deceive the Court by filing an altered document, the Court finds Plaintiff's assertion lacks credibility.
>
> . . . Contrary to Plaintiff's assertion in his Motion, the Agreement does not "require[] Defendants to mail the settlement check payment[] to [Plaintiff]." The Agreement, which Plaintiff signed and ratified, speaks for itself. It provides that $20,000 would be "placed in Plaintiff's account." To the extent Plaintiff now disputes the meaning of that term, the circumstances suggest the word

"placed" reasonably was contemplated to mean the funds would be directly deposited into Plaintiff's FCCC resident account. Defendants satisfied their obligation under the Agreement by delivering a check in the amount of $20,000 to FCCC for placement in Plaintiff's resident account, and the funds were placed in Plaintiff's resident account within 30 working days of the filing of the Stipulation of Dismissal.

(Doc. 307 at 4–5, 9–10 in No. 3:15-cv-1054-BJD-PDB (record citations omitted)). The Eleventh Circuit similarly rejected, as contradicted by the record, Plaintiff's claim that he was unaware of the lien when he entered into the settlement agreement. (Doc. 314 at 7 n.2 in No. 3:15-cv-1054-BJD-PDB).

Putting aside the factual misconceptions on which Plaintiff continues to rely, to the extent he raises a procedural due process claim for the seizure of his settlement proceeds to satisfy the civil restitution lien entered by the state court, Plaintiff cannot show "a liberty or property interest which has been interfered with by the State." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (explaining that courts "examine procedural due process questions in two steps": first, the court "asks whether there exists a liberty or property interest which has been interfered with by the State," and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

"[T]o alleviate the increasing financial burdens on the state and its local subdivisions caused by the expenses of incarcerating convicted offenders," the

Florida legislature imposed "a long-term civil liability for the costs of incarceration, by means of [a] civil restitution lien, against a convicted offender." Fla. Stat. § 960.29(1)(d). A civil restitution lien is "imposed against the real and personal property owned by the convicted offender," and attaches "not only to the offender's current assets, but also . . . to any future assets or 'windfall' proceeds . . . up to the full amount of the lien." Fla. Stat. § 960.29(1)(a), (b). "The term 'real or personal property' specifically includes any financial settlement or court award payable or accruing to a convicted offender or to a person on behalf of the convicted offender." Fla. Stat. § 960.291(7).

"An offender's liability for the costs of incarceration exists as a matter of law upon the offender's conviction." *Smith v. Fla. Dep't of Corrs.*, 27 So. 3d 124, 126 (Fla. 1st DCA 2010) (citations omitted); Fla. Stat. § 960.292(1) ("Upon conviction, the convicted offender shall incur civil liability for damages and losses to crime victims, the state, its local subdivisions, and aggrieved parties . . . ."); Fla. Stat. § 960.293(2) ("Upon conviction, a convicted offender is liable to the state and its local subdivisions for damages and losses for incarceration costs and other correctional costs."); *see also* Fla. Stat. § 960.292(2) ("Upon motion by the state, . . . or on its own motion, the court in which the convicted offender is convicted shall enter civil restitution lien orders in favor of . . . the state . . . . The court shall retain continuing jurisdiction over the convicted

10

offender for the sole purpose of entering civil restitution lien orders for the duration of the sentence and up to 5 years from release from incarceration or supervision, whichever occurs later."). Accordingly, Plaintiff "became liable for the costs of his incarceration at the time of his conviction." *Dixon v. Montero*, 398 So. 3d 448, 450 (Fla. 4th DCA 2024).

The FDOC, as an agent of the State of Florida, timely moved for liquidated damages in the state court in which Plaintiff was convicted.[7] *Id.* Because Plaintiff incurred liability at the time of his conviction, and the FDOC complied with the statutory requirements for obtaining a civil restitution lien against Plaintiff, the state court apparently granted the FDOC's motion without a hearing. Notably, "[p]roceedings to impose civil restitution liens pursuant to section 960.293 are civil in nature and do not implicate liberty interests, even when rendered in the criminal court." *Id.* (citing *Fla. Dep't of Corrs. v. Holt*, 373 So. 3d 969, 971 (Fla. 2d DCA 2023)). As such, Plaintiff "need not be present for imposition of the civil restitution lien judgment because liability was incurred upon conviction and liquidated damages are to be assessed pursuant to section 960.293(2)(b)." *Id.*

---

[7] The FDOC moved for imposition of a civil restitution lien against Plaintiff and the Circuit Court for Escambia County granted the motion on June 12, 2023, all within five years of Plaintiff's release from incarceration on July 1, 2019.

Importantly, the civil restitution lien attached to Plaintiff's settlement proceeds and "to any future assets . . . up to the full amount of the lien." Fla. Stat. §§ 960.29(1)(a), (b), 960.291(7). Thus, contrary to Plaintiff's position, he did not need to receive a notice and an opportunity to be heard before the settlement proceeds, or any future assets up to the full amount of the lien, could be applied for satisfaction of the lien. Based on the foregoing, Plaintiff's due process claim fails. For the same reasons, to the extent Plaintiff attempts to bring a retaliation claim premised on the same assertions as his due process claim, Plaintiff's retaliation claim fails as well. Therefore, Plaintiff's Complaint will be dismissed without prejudice under the PLRA.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.    This case is **DISMISSED without prejudice**.

2.    The Clerk of Court shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of April, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11
c:
Wendall Hall, #4637871